## Miles et al. v. Harris.

*Conveyances in fraud of creditors—Delaying and hindering—13 Eliz., c. 13.*
A conveyance of real estate to a trustee in trust to sell the same at public or private sale, as he may deem best in the interest of the grantor, and, pending the sale, "to improve the same or any part thereof," tends to delay and hinder existing creditors in the collection of their debts and, under 13 Eliz., c. 13, is of no effect as against them; hence, one who was a creditor when the conveyance was made may reduce his claim to judgment and proceed against the rents and the proceeds of the sale of the property by attachment execution, serving the trustee as garnishee.

Rule for judgment against garnishee. C. P. No. 4, Phila. Co., Sept. T., 1921, No. 2489.

*S. K. White,* for plaintiffs; *C. Sinkler,* for defendant.

AUDENRIED, P. J., Dec. 15, 1921.—On Oct. 26, 1921, Benjamin C. Miles and others, trading as Joseph Miles's Sons, obtained a judgment against William T. Harris for $3195.62 upon two promissory notes and a book account for goods sold and delivered. An attachment execution was issued thereon and was served upon J. Randall Williams. The matter is now before the court on a rule for judgment against the garnishee on his answers to the interrogatories filed by the plaintiffs.

It appears by the answers that Mr. Harris and his wife, on July 9, 1921, conveyed to Mr. Williams a large number of houses (some of them unfinished) and certain unimproved land in Montgomery County. The subject-matter of the conveyance, as described in the deed (a copy of which is attached to the answers), was "all the real estate, wherever situate, of him, the said William T. Harris, and all the right of dower or other interest of her, the said Mary E. Harris, his wife, therein."

The deed recites that Mr. Harris is an operative builder; that to build the houses owned by him, he incurred certain indebtedness; that by reason of ill-health he is unable to attend to the completion of such of the buildings as are in the course of construction, the sale of his property and the application of the proceeds of the lease or sale thereof to their care and the liquidation of his indebtedness; and that, therefore, he has requested Mr. Williams to accept the conveyance of his property upon certain trusts.

The trusts set forth in the deed are as follows:

"1. To sell and convey as soon as the same may be conveniently done all of said real estate hereby conveyed and transferred, either at public or private sale or sales and for such price or prices and upon such terms as Grantee may deem best in the interest of said William T. Harris, and to make good and sufficient deeds therefor to the purchasers thereof in fee simple or for any less estate, without any obligation on the latter to see to or be responsible for the application of the purchase money.

"2. To ask, demand, sue for, levy, recover and receive all rents, and other sums of money due the said William T. Harris, in connection with said real estate, to give acquittances or other sufficient discharges in the law therefor, and to make such compromises or other arrangements as Grantee may deem beneficial to this trust.

"3. Pending the sale of any of said real estate, to mortgage, lease, repair, alter or improve the same or any part thereof, to pay all taxes, water rents and other charges against the same, to keep the same adequately insured, and to do all things necessary for the proper care thereof.

"4. To apply the proceeds of sale of any of said real estate and any and all other moneys received by Grantee from rents or otherwise, after deducting therefrom all reasonable costs and charges and expending therefrom all sums

Miles et al. *v.* Harris.

necessary in the judgment of Grantee to complete the buildings on any of said real estate, to the payment of all the just demands of the creditors of the said William T. Harris in full, or if there shall not be sufficient assets to pay all of said demands in full, to the payment of the same equally in proportion to the respective amounts thereof without preference to creditors, and should any part of said estate, property or funds remain after complying with the terms aforesaid, to redeliver and reconvey the same unto the said William T. Harris, his heirs, executors, administrators and assigns.

"5. Should Grantee at any time be unwilling or unable to continue to act as trustee hereunder, to assign, transfer and convey all of said real estate, and personal property arising therefrom, held by him at such time, to Richard J. Hamilton of the Township of Lower Merion aforesaid, his heirs and assigns, in trust for the uses and purposes hereinbefore set forth."

The garnishee admits that he holds as trustee under the defendant's deed, besides the real estate above mentioned, certain personal property, viz., a mortgage executed by Frank W. Houston, securing payment of the sum of $1500 as a third lien on property at Narberth, known as No. 9 East Montgomery Avenue (which had come into his hands presumably as the result of the sale of the houses conveyed to him by Mr. Harris), also a note of Frank W. Houston for $286.20 and a credit balance of $3103.38 with the Chester County Trust Company, made up of rents from the houses conveyed to him by the defendant, less certain payments made to prevent the foreclosure of mortgages covering properties included in the trust estate.

It appears by the answers that the defendant's debts aggregate approximately $190,000.

The claims on which the plaintiff recovered judgment arose prior to the defendant's conveyances to the garnishee, but those represented by the notes were not then demandable.

We are of the opinion that, so far as the creditors of Mr. Harris are concerned, his deed to Mr. Williams was without effect; and that, with relation to their rights, the real estate therein referred to is to be regarded as still the property of the defendant.

The reason for so holding is that the law forbids not only conveyances intended to defeat the claims of creditors, but also such as may have for their purpose the hindering or delaying of the efforts of creditors to collect what may be owing to them. That the conveyance from Harris to Williams was intended to gain time at the expense of his creditors is plain on the face of that instrument.

"A creditor," says Coulter, J., in Kepner *v.* Burkhart, 5 Pa. 478, "is entitled to sell the estate of his debtor for the satisfaction of his judgment according to the mode and terms prescribed by the law; and whatever expedient the debtor adopts by deed or alienation, with the clear intent to defeat or prevent that, is void."

It is true that the garnishee was authorized to apply the proceeds of sales of the defendant's real estate, and such rentals as he might receive from it, to the payment of the just demands of the latter's creditors in full; but, pending sale of the land, he is directed *to improve the same or any part thereof*, a duty which transcends that of the ordinary trustee for the benefit of creditors; and while the deed requires the garnishee to sell the real estate as soon as may be convenient, this authority is coupled with the direction that the manner of sale, the price and the terms shall be such as the grantee may deem best for the interest, not of the creditors of Mr. Harris, but of Mr. Harris himself.

1 D. & C.

Miles et al. v. Harris.

A clause in an assignment for creditors by which the trustees were to be restrained from selling the land for a certain period was said by Gibson, C. J., in Adlum v. Yard, 1 Rawle, 163, 171, to be "undoubtedly in delay of creditors and to bring the whole within the purview of the 13th Eliz."

"Creditors are entitled not only to be paid, but to be paid as their claims accrue; and a debtor has no more right to postpone payment simply for his own advantage than to defeat it altogether:" 13 Am. & Eng. Ency. of Law, 244.

A purpose to delay a creditor is fraudulent in law, although the debtor's intent may be honest in the sense in which that term is ordinarily used. Doubtless, Mr. Harris meant that all his creditors should be paid in full, and, in good faith, believed that by conveying his real estate to Mr. Williams upon the trusts set forth in his deed, he was acting for their benefit; but, for all that, the transaction was contrary to law, and, so far as concerns those to whom he was in debt, his deed is of no effect. That a debtor should impose his own terms upon his creditors in the application of his estate to the payment of their claims cannot be countenanced or tolerated.

As to the creditors of Harris, his conveyance to Williams raised a trust in favor of the former in respect to the real estate to which it related, and the plaintiffs, as creditors, may treat it and anything in the hands of Williams in the way of personal propery derived from it as if it were the property of Harris. This leads to the conclusion that the plaintiffs have the right to attach the note, the mortgage and the money referred to in the answers, just as they might attach any similar property in the hands of an ordinary agent or depository of the defendant.

The rule for judgment against the garnishee is made absolute; and it is adjudged that the note, mortgage and moneys above referred to are subject to the plaintiffs' attachment; but the garnishee is allowed the sum of $25, to be paid out of the property in his hands, for counsel fees.